CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAHLYL ACKISS, | ) |
| Plaintiff, | ) Case No. 7:24-cv-00122 |
| v. | ) **MEMORANDUM OPINION** |
| T. STUMPF, | ) By:  Hon. Pamela Meade Sargent |
| | )       United States Magistrate Judge |
| Defendant. | ) |

Plaintiff, Kahlyl Ackiss, ("Ackiss"), a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against Defendant, T. Stumpf, ("Stumpf"), a correctional officer at Red Onion State Prison, ("Red Onion"), claiming Stumpf used unconstitutional excessive force against Ackiss while Ackiss was housed at Red Onion. (Verified Compl. at 6 [Docket Item No. 1].) Stumpf moves for summary judgment on the ground that Ackiss failed to exhaust administrative remedies before filing this lawsuit. (Def.'s Mot. for Summ. J. [Docket Item No. 16]) ("Motion"). For the reasons discussed below, the court will grant the Motion and award summary judgment to Stumpf.

## I. BACKGROUND

### A. Plaintiff's Claims

Ackiss claims that, on March 31, 2023, Stumpf, while acting under color of state law as an employee of the Virginia Department of Corrections, ("VDOC"), allowed his canine to bite Ackiss three times—once on his head, once on his shoulder and once on his back. (Verified Compl. at 3-4, 6; Pl.'s Aff., Feb. 8, 2024, at ¶ 3 [Docket Item No. 1-1].) According to Ackiss, during his pod's recreation time that

day, another prisoner threatened to kill him and approached him with clenched fists. (Verified Compl. at 4–5.) Ackiss alleges that he "defended himself" from the assault of the other inmate and that the control booth officer pressed a buzzer and shot a gun in audible warning to stop the fight. (Verified Compl. at 5.) However, there was no correctional officer on the pod floor, and Ackiss insists that, though he wished to stop fighting, the absence of an officer to intervene necessitated his continued self-defense. (Verified Compl. at 4–5.)

Stumpf and his canine arrived in the pod to separate the prisoners and stop the fight. (Verified Compl. at 5–6.) Ackiss asserts that Stumpf first allowed his canine to bite him and, then, Stumpf ordered Ackiss to get on the ground and cease fighting. (Verified Compl. at 6.) Ackiss further avers that Stumpf gave him no verbal warning before or during the canine's attack and that he was close enough to Stumpf at the time of the attack to hear if Stumpf had, in fact, given any such warning. (Verified Compl. at 6.; Pl.'s Aff., Feb. 8, 2024, at ¶ 3.)

Stumpf filed a disciplinary report against Ackiss concerning the fight, and Ackiss's disciplinary hearing was held on April 25, 2023. (Verified Compl. at 5–7.) During the hearing, the hearing officer summarized the security video footage of the incident. (Verified Compl. at 7.) Her summary indicated that, at the time Stumpf and his canine entered the pod, Ackiss was on top of the other inmate and was actively striking him. (Verified Compl. at 7.) Her summary further indicated that Ackiss continued striking the other inmate after the canine's first bite to his shoulder and that, after that initial bite, Ackiss grabbed the dog by its snout using both hands. (Verified Compl. at 8.) The hearing officer further stated that Stumpf tried to get his canine to release, but Ackiss maintained his grip on the canine. (Verified Compl. at 8.) Only after Ackiss released the canine, did the canine disengage. (Verified Compl. at 8.)

## B. VDOC Disciplinary and Grievance Policies

VDOC Operating Procedure, ("OP"), § 866.1, "Offender Grievance Procedure," sets forth the procedure used to resolve inmate complaints. (Aff. of T. Still at ¶¶ 4−9 & Encl. A [Docket Item No. 17-1]) ("Still Affidavit"). Before a VDOC inmate may submit a Regular Grievance, OP 866.1 requires an inmate to demonstrate that he has made a good-faith effort to informally resolve his complaint. (Still Affidavit at ¶ 6.) He may do so by submitting an Informal Complaint form to the institution's Grievance Department, which is then forwarded to the appropriate department head. (Still Affidavit at ¶ 6.) Prison staff are to provide a written response on the Complaint form within 15 days of its filing. (Still Affidavit at ¶ 6.) If the inmate is dissatisfied with the response, he can submit a Regular Grievance on the issue within 30 days of the event about which he complains. (Still Affidavit at ¶ 6.) To effectively do so, he must attach the Informal Complaint and any supporting documentation to the Regular Grievance. (Still Affidavit at ¶ 6.)

A Regular Grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt and will include the reason for the rejection and instructions on how to correct and resubmit the form, where feasible. (Still Affidavit at ¶ 8.) If the inmate desires a review of the intake decision, he must send the returned Grievance form to the Regional Ombudsman within five days. (Still Affidavit at ¶ 8.) Pursuing an intake appeal of a rejected Grievance, alone, does not constitute complete administrative exhaustion but is merely a step toward exhaustion. (Still Affidavit at ¶ 8.)

A Regular Grievance that meets OP 866.1's filing criteria will be accepted for intake and considered filed on the date it is received by the Grievance Department. (Still Affidavit at ¶¶ 7, 9.) Following acceptance, there are three levels of review available. (Still Affidavit at ¶ 9.) Level I reviews are performed by the Warden or Superintendent of the facility housing the inmate, and Level I responses are to be

issued within 30 days. (Still Affidavit at ¶ 9.) An inmate who is not satisfied with the outcome of his Level I review may appeal that decision to Level II within five days of the receipt of the Level I decision. (Still Affidavit at ¶ 9; OP 866.1 at 12. Level II reviews are conducted by either the Regional Administrator, the Health Services Director or the Chief of Operations for Classification and Records, and those responses must be issued within 20 days. (Still Affidavit at ¶ 9.) Level II is the highest level of appeal for most issues. (Still Affidavit at ¶ 9.) For the limited issues subject to Level III appeal, the Chief of Corrections or Director of the VDOC will conduct a final level of review within 20 days. (Still Affidavit at ¶ 9.)

### C. Plaintiff's Exhaustion Efforts

Ackiss filed an Informal Complaint concerning the canine attack on April 3, 2023. (Still Affidavit Encl. B at 6.) His Complaint stated:

> I was involved in a physical altercation with another inmate [and] as we were on the ground 2 K-9 officers attacked me with 2 K-9 dogs. One K-9 latched onto my shoulder as the other K-9 latched onto my head. Ain't no K-9 dog suppose[d] to bite someone on their head. That was cruel and unusual punishment and police brutality[,] and I would like to press charges.

(Still Affidavit Encl. B at 6.) On April 5, 2023, Major C. King responded to Ackiss's Complaint, stating that Ackiss was "still actively fighting when the canine entered the housing unit," that Ackiss continued to be combative toward the canine after it first engaged and that Ackiss moved his head to the dog's face. (Still Affidavit Encl. B at 6.)

Ackiss filed a Regular Grievance on April 10, 2023, claiming he was not satisfied with the informal process and claiming that the engagement of two canines during a single altercation and the application of canine force to his "neck/head area"

4

violated prison policy and amounted to cruel and unusual punishment and police brutality. (Still Affidavit Encl. B at 4.) In his Grievance, Ackiss stated that he wanted the responsible officers to be punished for misconduct and that he wanted to be transferred to another facility. (Still Affidavit Encl. B at 4.)

The following day, Institutional Ombudsman C. Vilbrandt rejected Ackiss's Regular Grievance as an improper "request for services." (Still Affidavit Encl. B at 5.) In explanation, Vilbrandt stated that, "[a]ccording to Major King, policy was followed in the altercation with the canine" and that Ackiss was ineligible for transfer due to his recent completion of the step-down program, which required him to remain in general population at Red Onion for one year without any disciplinary charges. (Still Affidavit Encl. B at 5.)

On April 14, 2023, Ackiss appealed the Grievance intake decision to the Regional Ombudsman, claiming he did not request any services. (Still Affidavit Encl. B at 3.) On April 25, 2023, Regional Ombudsman, Cathy Meade, overturned the intake decision and returned the Grievance to the Red Onion Facility Unit Head. (Still Affidavit at ¶ 15.)

Ackiss received an unfavorable Grievance decision at Level I. (Still Affidavit Encl. B at 1.) On May 15, 2023, Red Onion Warden Rick White determined Ackiss's Grievance was unfounded, explaining that, according to Assistant Warden D. Turner, two dogs were not applied, and no dog engaged Ackiss's head or neck. (Still Affidavit Encl. B at 1.) Ackiss did not file a Level II appeal within five days of his receipt of the Level I decision. (Still Affidavit at ¶ 17.) Ackiss filed this action on February 15, 2024. (Verified Compl.)

In Ackiss's Affidavit, Ackiss states only "… I exhausted all grievance remedies to the best of my abilities…." (Docket Item No. 20 at 1.) Ackiss provided no documentation to support this conclusion.

## II. SUMMARY JUDGMENT

Federal Rules of Civil Procedure Rule 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation or conclusory allegations to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make credibility determinations when adjudicating a motion for summary judgment, "[w]hen opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act of 1995, ("PLRA"), requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *See Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies in accordance with the PLRA, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)) Failure to exhaust is an affirmative defense under the PLRA. *See Jones*, 549 U.S. at 216.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an

7

administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"); (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"); or (3) the "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44.

To satisfy the PLRA's exhaustion requirement, a Virginia inmate must complete the grievance procedure through the highest level of available review. (Still Affidavit at ¶¶ 9–10.) Only an inmate who receives an unfavorable decision at the final level of appeal before filing suit has sufficiently exhausted administrative remedies in accordance with the PLRA. (Still Affidavit at ¶¶ 9-10.)

Here, it is undisputed that Ackiss did not file a Level II appeal of his unfavorable Level I Grievance decision. (Still Affidavit at ¶ 17.) Ackiss claims only that he "exhausted all grievance remedies to the best of [his] abilities." (Docket Item No. 20 at 1.) Ackiss offers no further detail concerning his failure to appeal the Grievance decision to the next level and has not offered any evidence that Level II review was unavailable to him. Because complete administrative exhaustion is mandatory before a prisoner may file a civil rights complaint under the PLRA, and because Ackiss failed to exhaust available remedies before filing this action, Stumpf is entitled to summary judgment on Ackiss's claims. *See Moss*, 19 F.4th at 623 (affirming grant of summary judgment in favor of defendant when the plaintiff did not exhaust the administrative remedies available to him).

## IV.  CONCLUSION

For the reasons set forth above, the court will **GRANT** Stumpf's Motion and dismiss this action with prejudice.[1] An appropriate order will enter.

**ENTERED** this 13th day of March, 2025.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

---

[1] The dismissal in this case is with prejudice because Ackiss cannot now cure his failure to exhaust, in that the period of appeal to Level II has long passed.

9